UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
OLGA CABALLERO, JIE DU, by her friend
MICHAEL TONG, ALEXANDRA
NEGRON, MARIANO VAZQUEZ, by his
next friend IRAIDA VASQUEZ; and JUAN
SANTOS, by his next friend RITA BAEZ,
*Individually and on Behalf of All*
*Others Similarly Situated,*

           Plaintiffs,

       -against-

SENIOR HEALTH PARTNERS, INC.;
HEALTHFIRST, INC.; HF MANAGEMENT
SERVICES, LLC; HEALTHFIRST HEALTH
PLAN, INC.; XYZ CORPORATIONS 1-10;
and HOWARD ZUCKER, as Commissioner of
the New York State Department of Health,

           Defendants.
---------------------------------------------------------X
MADELINE BUCCERI, PATRICIA
TRUJILLO, And LOURDES LO, *on Behalf
of Themselves and All Others Similarly
Situated,*

           Plaintiffs,

       -against-

HOWARD ZUCKER, as Commissioner of
the New York State Department of Health;
HF MANAGEMENT SERVICES, LLC;
SENIOR HEALTH PARTNERS, INC.; HF
ADMINISTRATIVE SERVICES, INC.;
HEALTHFIRST, INC.; HEALTHFIRST
HEALTH PLAN, INC.,

           Defendants.
---------------------------------------------------------X

**MEMORANDUM
AND ORDER**
16 CV 0326 (CLP)

18 CV 2380 (CLP)

**POLLAK**, United States Magistrate Judge:

On January 21, 2016, plaintiffs Olga Caballero, Jie Du, by her friend, Michael Tong, and Alexandra Negron (the "Caballero Plaintiffs"), commenced this class action, individually and on behalf of all others similarly situated, against defendants Senior Health Partners, Inc., Healthfirst, Inc., HF Management Services, LLC, Healthfirst Health Plan, Inc., XYZ Corporations 1-10, Howard Zucker, as Commissioner of the New York State Department of Health, and Samuel D. Roberts, as Commissioner of the New York State Office of Temporary and Disability Assistance, alleging violations of the Medicaid Act, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the U.S. Constitution, and New York State laws. Plaintiffs, recipients of Medicaid-funded home care services through two Managed Long Term Care ("MLTC") health plans—Senior Health Partners or Healthfirst CompleteCare—claimed that the Healthfirst defendants ("Healthfirst") unlawfully 1) reduced or threatened to reduce the Caballero Plaintiffs' home healthcare services; 2) denied or refused to consider increases in the Caballero Plaintiffs' home healthcare services; and 3) failed to provide timely and adequate notice to the Caballero Plaintiffs about the reduction or denial of services. (Caballero Compl.[1] ¶ 4; Caballero Pls.' Mem.[2] at 1). On April 1, 2016, the Caballero Plaintiffs filed a First Amended Class Action

---

[1] Citations to "Caballero Compl." refer to the Complaint filed by the Caballero Plaintiffs on January 21, 2016.

[2] Citations to "Caballero Pls.' Mem." refer to the Plaintiffs' Unopposed Memorandum of Law in Support of Their Motion for Class Certification in Connection with Settlement, Appointment of Class Representatives and Class Counsel, Preliminary Approval of the Parties' Settlement Stipulation, and Approval of Notice to Class Members, filed April 20, 2018.

Complaint, adding as plaintiffs Mariano Vazquez, by his next friend Iraida Vasquez, and Juan Santos, by his next friend Rita Baez. (Caballero Am. Compl.[3]).

On October 24, 2016, plaintiffs Madeline Bucceri, Patricia Trujillo, and Lourdes Lo (the "Bucceri Plaintiffs," together with the Cabellero Plaintiffs, the "Named Plaintiffs"), on behalf of themselves and all others similarly situated, commenced a class action in the Southern District of New York against defendants Howard Zucker, in his official capacity as Commissioner of the New York State Department of Health, HF Management Services, LLC, Senior Health Partners, Inc., HF Administrative Services, Inc., Healthfirst, Inc. and Healthfirst Health Plan, Inc., also raising claims on behalf of current and future Medicaid recipients who receive or will receive Medicaid-funded home care services from two Healthfirst MLTC plans, Senior Health Partners, Inc. and CompleteCare. (Bucceri Compl.[4] ¶ 1). The Bucceri Plaintiffs allege that they have asked for an increase in their home care services and rather than timely recording, assessing, and determining these requests, defendants ignored or used flawed systems of assessment, systematically denying or reducing their needed service.

Following the filing of the Amended Complaint in the Caballero action, the parties engaged in extensive settlement negotiations under the supervision of this Court. At the direction of the Honorable Vernon S. Broderick, United States District Judge for the Southern District of

---

[3] Citations to "Caballero Am. Compl." refer to the Caballero Plaintiffs' First Amended Complaint, filed April 1, 2016, Ex. B to the Notice of Proposed Class Action Settlement Under 28 U.S.C. § 1715 ("Notice"), filed on May 4, 2018, ECF No. 94-2.
[4] Citations to "Bucceri Compl." refer to the Bucceri Plaintiffs' Class Action Complaint, filed October 24, 2016.

New York, the Bucceri Plaintiffs joined in the settlement negotiations before the undersigned. Ultimately, the parties were able to reach a settlement and successfully integrated the Bucceri claims into the settlement agreement as well.

On April 20, 2018, the Bucceri Plaintiffs moved to transfer the Bucceri action from the Southern District of New York to this Court, and on April 23, 2018, Judge Broderick ordered the case transferred to the Eastern District of New York. On July 10, 2018, the Caballero Plaintiffs consented to have the case assigned to the undersigned for all purposes; the Bucceri Plaintiffs also consented to the undersigned's jurisdiction on the same day. On July 19, 2018, the parties in both actions sought to consolidate the cases with an eye to consummating the settlement reached among all parties.

The consolidated settlement seeks to certify a class consisting of all current and future Medicaid recipients who receive Home Care Services through Healthfirst Defendants. (Sett. Agr.,[5] Art. III (A)).

Currently pending before this Court is plaintiffs' unopposed motion seeking an Order: 1) preliminarily certifying the Class for purposes of settlement; 2) appointing the proposed Class representatives; 3) approving Class counsel; 4) preliminarily approving the terms of the Settlement; 5) approving the form of Notice to the Class; and 6) scheduling a Fairness Hearing. Given that consolidation of the cases did not occur until after this motion was filed, the Bucceri

---

[5] Citations to "Sett. Agr." refer to the proposed Stipulation and Order of Settlement, attached as Ex. E to the Notice of Proposed Class Action Settlement Under 28 U.S.C. § 1715 ("Notice"), filed on May 4, 2018.

Plaintiffs filed a letter on August 13, 2018 confirming that they "are in agreement with the contents of the motion and support the motion as filed." (Angela Smedley Ltr., ECF No. 99).

## FACTUAL BACKGROUND

The <u>Caballero</u> Amended Complaint alleges that the five named plaintiffs—Olga Caballero, Jie Du, by her next friend Michael Tong, Mariano Vazquez, by his next friend Iraida Vasquez, Alejandra Negron, and Juan Santos by his next friend Rita Baez—were all recipients of Medicaid who suffered from various disabilities requiring Home Health Care services. (<u>Caballero</u> Am. Compl. ¶ 65). Each was a recipient of Medicaid-funded home care services through defendants Healthfirst CompleteCare or Senior Health Partners (together, "Healthfirst"), two MLTC health plans in New York State. (<u>Id.</u> ¶ 1).

It is alleged that plaintiff Caballero is a recipient of home health care services provided by Healthfirst. She suffers from a variety of medical conditions that result in her needing assistance with various daily activities that require the help of a home attendant. (<u>Caballero</u> Am. Compl. ¶¶ 129-33). Until October 1, 2015, she received 35 hours per week of home care; that care was insufficient to meet her needs because the care was only provided Monday through Friday, leaving her on her own during the weekends. (<u>Id.</u> ¶¶ 136-37). She alleges that on or about November 2, 2015, she received a notice stating that her home care services were being reduced to eight hours per week based on an assessment done in October 2015 that determined that the services were no longer medically necessary. (<u>Id.</u> ¶¶ 138, 141). Not only could she not

read the notice because she is illiterate, but the notice failed to provide information necessary for her to ask for a Fair Hearing. (Id. ¶¶ 142-47).

Plaintiff Jie Du, a 96 year old woman, also allegedly suffers from a variety of medical conditions that limit her ability to function on her own. (Id. ¶¶ 167, 169-70). She received 42 hours of home care per week and like Ms. Caballero, received a notice informing her that her hours were being reduced based on an assessment done in November 2015, concluding that the services were not medically necessary. (Id. ¶¶ 175, 177). Plaintiffs allege that like Ms. Caballero's notice, the grounds for reduction are not based on any changes in her medical condition but only based on the way Healthfirst characterized her needs. (Id. ¶ 181). Ms. Du's notice also allegedly contained false information and failed to provide adequate information to allow her to request a Fair Hearing. (Id. ¶¶ 178-80).

Plaintiff Alejandra Negron suffers from medical conditions that prevent her from walking without help and prevent her from performing routine activities without daily care. (Id. ¶¶ 202-206). Prior to January of 2015, Ms. Negron received 55 hours of care per week. (Id. ¶ 210). In January 2015, Healthfirst informed her that because Senior Health Partners did not want to pay an aide overtime, Ms. Negron's services were being reduced to 50 hours a week. (Id. ¶ 211). Although her hours were reduced at that time to 50 hours per week, she did not receive any notice until November 29, 2015, at which time she was informed that her hours would be further reduced to 25 hours per week, based on an assessment of her need for those services. (Id. ¶¶ 216,

219).  In addition to many other alleged problems with the notice, it failed to provide a

meaningful basis on which she could decide to ask for a Fair Hearing.  (Id. ¶ 222).

Named plaintiff Mariano Vazquez suffers from memory problems, has difficulty reading

and writing, and only speaks Spanish.  (Id. ¶¶ 245-46).  Until December 24, 2015, Mr. Vazquez

received 35 hours per week of home care which he required due to his various other medical

conditions.  (Id. ¶ 250).  Although his family members visit him occasionally, his hours of care

were not sufficient to ensure his safety and enable him to attend his many medical appointments.

(Id. ¶¶ 251-52).  In December 2015, he received a notice indicating that his services would be

reduced to 24 hours per week based on an assessment done in November 2015.  (Id. ¶ 257).

Since he could not read the notice himself, his home attendant told him that his hours were being

reduced but did not read to him the part of the notice that indicated that he had to request a Fair

Hearing by January 8, 2016.  (Id. ¶ 259).  As a result, his home care was reduced and he missed

the deadline for filing.  (Id. ¶¶ 260-63).  Like the other plaintiffs, the notice he received was

deficient in certain respects.  (Id. ¶¶ 264-67).

Juan Santos was a 93 year old man who had been diagnosed with Alzheimer's disease,

along with other physical ailments, requiring that he have total assistance with almost all of his

daily activities.  (Id. ¶¶ 290-93).  His daughter also receives homecare services.  (Id.

¶ 297).  Until February 2016, Mr. Santos received 63 hours of care, and his daughter received 28

hours of care per week.  (Id. ¶ 296).  In January 2016, Mr. Santos was notified that his hours

were being reduced to 41 hours because more hours were not medically necessary and were the

result of a mistake. (Id. ¶ 298). Like the other plaintiffs, the notice suffered from a variety of deficiencies. (Id. ¶¶ 301-307). Although a Fair Hearing was requested after the reduction in services, the hearing had not been scheduled by the time the First Amended Complaint had been filed (id. ¶¶ 312-16), and Mr. Santos passed away, with a suggestion of death being filed on December 5, 2017. (Caballero Pls.' Mem. at 4, n.3).

The Bucceri Complaint alleges claims on behalf of Madeline Bucceri, Patricia Trujillo, and Lourdes Lo, all of whom are Medicaid and Medicare recipients who require home care services.

As of May 2016, Ms. Bucceri was receiving four hours of home care services through Senior Health Partners on four days of the week and five hours on the remaining three days, for a total of 31 hours per week. (Bucceri Compl. ¶ 121). When Ms. Bucceri's hip and leg pain increased in May 2016, she requested additional hours of care. (Id. ¶ 122). Although Senior Health Partners called Ms. Bucceri and asked certain questions, no one came to assess her condition and her hours were not increased. (Id. ¶¶ 123-24). She fell while walking unattended and was hospitalized. (Id. ¶¶ 125-27). Despite being contacted by a nurse in the hospital who requested that Ms. Bucceri receive a total of 70 hours per week, Senior Health Partners did not increase her services as recommended. (Id. ¶ 128). Instead, Senior Health Partners notified Ms. Bucceri that they would only increase her hours by two for a total of 33 hours per week. (Id. ¶ 129). In September 2016, counsel for Ms. Bucceri requested an increase in home care services on an expedited basis; about two weeks later, the request was denied. (Id. ¶¶ 134-35).

8

Plaintiff Patricia Trujillo also requires assistance with the activities of daily living as a result of her medical conditions. (Id. ¶ 139). She received eight hours of care daily Monday through Friday, and Healthfirst has continuously denied her requests for weekend hours. (Id. ¶ 140). In April 2016, Healthfirst not only denied her request for weekend hours, but also determined that her hours should be cut in half from 40 to 20 hours per week, based on family care which she claims is non-existent. (Id. ¶ 150). The plaintiffs allege that there are numerous falsehoods and errors in the Uniform Assessment System ("UAS") report, including a statement that Ms. Trujillo had not fallen recently, and a representation that she has strong family relationships. (Id. ¶¶ 152, 154-55). When she received a notice cutting her hours down to 20 per week, she requested an internal plan appeal and a Fair Hearing, in response to which Healthfirst offered to reduce her hours only to 30 hours per week. (Id. ¶¶ 156-57). While the Fair Hearing was pending, Healthfirst continued to refuse to increase her hours. (Id. ¶¶ 159-60). It was not until the Fair Hearing decision in August 2016 that Healthfirst authorized her to receive 40 hours per week. (Id. ¶ 161).

Plaintiff Lourdes Lo is enrolled in Senior Health Partners and received 39 hours per week of home care services. (Id. ¶ 167). Due to Parkinson's disease, Ms. Lo has difficulty walking and fell two months before a report issued on December 11, 2015, indicating that her home care hours should be reduced from 39 to 20. (Id. ¶ 168). When Ms. Lo requested a Fair Hearing to challenge the reduction, counsel for Senior Health Partners withdrew the decision to reduce her hours and indicated that she would be reassessed in six months. (Id. ¶ 169). She fell in February

9

2016 and was hospitalized with a fracture to the left shoulder. (Id. ¶ 170). On May 4, 2016, Senior Health Partners issued a determination reducing her hours to 28 hours per week. (Id. ¶ 171). At the Fair Hearing, the Senior Health Partners representative offered to reduce the hours to 35 per week; Ms. Lo agreed because she was afraid she would lose more hours otherwise. (Id.) Shortly thereafter, she fell several times while unattended and in July 2016, she contacted counsel to request an increase in care. (Id. ¶ 172). The Senior Health Partners care manager stated that because Ms. Lo had recently agreed to a decrease and since there was no evidence that her condition had changed, her hours would not be increased. (Id. ¶ 173). Since there was no written determination issued by Senior Health Partners, Ms. Lo did not receive written notice of her right to appeal. (Id.) In August 2016, Senior Health Partners conducted an at-home assessment and ultimately issued a notice agreeing to increase her hours back to 39 per week. (Id. ¶ 176).

The Caballero Plaintiffs allege that defendants maintained a pattern and practice of reducing or threatening to reduce necessary care without timely and adequate notice required by law, and that they based their reductions on unlawful and arbitrary limits on care. The Bucceri Plaintiffs allege that Healthfirst, under the auspices of DOH, engaged in a practice of denying requests for increased hours of medically necessary care.

The proposed Settlement reached between defendants Healthfirst and DOH on the one hand and the combined Class, consisting of both the Caballero and Bucceri Plaintiffs, requires defendant Healthfirst to make certain changes in their practices and policies. Among other

things, Healthfirst agrees not to reduce or threaten to reduce a member's Home Care Services based upon a prior mistake; and agrees not to reduce or threaten to reduce services based on either an eight-hour cap or a prohibition on "Additional Findings" as a category of care. (Sett. Agr., Art. IV (A), (B)). Healthfirst further agrees to comply with the requirements of MLTC Policy 16.07, issued on November 17, 2016, relating to task-based assessment tools, and with MLTC Policy 16.06, also issued on November 17, 2016, relating to the requirements for notices proposing to reduce or discontinue care services. (Id., Art. IV (C) and (D), Exs. C and D). Healthfirst also agrees to follow certain requirements when evaluating a request for an increase in services; agrees not to use the number of hours requested as the maximum if Healthfirst determines that more are required; agrees to include information in future versions of the Member Handbook, alerting enrollees as to how they can request an increase; and agrees to conduct an assessment of all Class members within 180 days after the effective date of Settlement. (Id., Art. IV (E), (F), (G), (I)). The Settlement also provides certain relief for Class Members whose hours and services were previously reduced, and requires Healthfirst to train its staff to comply with the stipulations in the Settlement. (Id., Art. IV (J), (K)).

The proposed Settlement further requires DOH to review the Healthfirst reports and issue a communication to all Partial Capitation and Medicaid Advantage Plan Administrators in the form of an email agreed to and attached as Exhibit E. (Id., Art. V (A), (B)). DOH is also required to undertake to ensure that the Managed Long Term Care Plans comply with certain requirements enumerated in the Settlement, conduct trainings, maintain a survey and audit

schedule, require the submission of task-based assessment tools for approval and review them to determine if they comply with certain parameters set forth in the Settlement, and maintain and monitor complaints lodged by enrollees. (Id., Art. V (C), (D)).

The proposed Settlement also provides for certain reporting requirements to be followed by Healthfirst for the first 18 months following the effective date of the Settlement. (Id., Art. VI).

## DISCUSSION

I. Rule 23 Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, a plaintiff also must satisfy one of the three subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or fact predominate over individual questions, and a class action is superior to other methods for bringing suit. Fed. R. Civ. P. 23(b). See generally Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Annunziato v. Collecto, Inc., 293 F.R.D. 329, 334 (E.D.N.Y. 2013). It is a plaintiff's

12

burden to establish compliance with each of the requirements of Rule 23 by a preponderance of the evidence, In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013), but in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted). While courts are required to conduct a "rigorous" analysis, Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013), the court may exercise "broad discretion" and "take a liberal rather than a restrictive approach" when reviewing whether to certify a class. Annunziato v. Collecto, Inc., 293 F.R.D. at 334.

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Collier v. Montgomery Cty Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000). For purposes of settlement only, defendants do not oppose conditional certification. (See Caballero Pls.' Mem. at 1, n.1); see also 4 Alba Conte, et al., Newberg on Class Actions § 11.27 (4th ed. 2002) (providing "[w]hen the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only").

A.  The Requirements of Rule 23(a)

    1.  Numerosity

In this case, there appears to be no dispute that the numerosity requirement of Rule 23(a)

has been satisfied.  According to the New York State Department of Health, as of December

2017, there were approximately 14,500 Medicaid recipients enrolled in Healthfirst Managed

Long Term Care Plans.[6]  (See Caballero Pls.' Mem. at 7).  Although the exact number of class

members is not currently known, this estimated population exceeds the Second Circuit's

presumed standard of numerosity "at a level of 40 members."  Consolidated Rail Corp. v. Town

of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert. denied, 115 U.S. 1122 (1995).  Thus, the

allegations in the Complaint clearly satisfy the standard of numerosity.

Moreover, as plaintiffs point out, the class consists of low income, severely disabled

individuals, who do not have the financial ability or the wherewithal to bring individual actions.

(Caballero Pls.' Mem. at 7).  Factors such as the inconvenience of trying individual actions, as

well as the financial resources of potential class members, weigh heavily in favor of a class

action in this case.  See Savino v. Computer Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997),

aff'd, 164 F.3d 81 (2d Cir. 1998); see also Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)

(noting that such factors for determining the impracticality of joinder include the "judicial

economy" that arises from avoiding multiple suits and the financial resources and ability of

---

    [6] See Recipients Enrolled in Mainstream Medicaid Managed Care by County, Plan, Aid Category, and NYSoH 30, New York State Dept. of Health, available at https://www.health.ny.gov/health_care/managed_care/reports/enrollment/monthly/2017/docs/en12_17.pdf (last visited August 31, 2018).

claimants to institute individual suits). Accordingly, the Court finds the requirement of numerosity has been satisfied.

### 2. Common Questions of Fact or Law

In determining whether the plaintiffs can show that the claims of the potential Rule 23 Class members share common questions of law or fact, the Rule does not require that "'all questions of law or fact raised be common.'" Savino v. Computer Credit, Inc., 173 F.R.D. at 352 (emphasis in original) (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)). As long as "common questions . . . predominate," any differences in the circumstances raised by individual members will not defeat the requirement of commonality. In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010). In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged." Savino v. Computer Credit, Inc., 173 F.R.D. at 352. Commonality may be found where class members allege injuries deriving from a unitary course of conduct or singular policy or system. See Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997); M.K.B. v. Eggleston, 445 F. Supp. 2d 400, 441 (S.D.N.Y. 2006) (finding commonality where plaintiffs alleging denial of public assistance, Medicaid, and food stamps pointed to systemic errors); Verdow ex. rel. Meyer v. Sutkowy, 209 F.R.D. 309, 312 (N.D.N.Y. 2002) (finding commonality where state and county officials were denying Medicaid eligibility for certain trust beneficiaries).

Here, there are several common legal and factual issues. More specifically, plaintiffs' claims involve: 1) whether Healthfirst's reductions in care were preceded by timely and adequate notice; 2) whether Healthfirst's denials of requests for increases in services were properly issued; and 3) whether these practices have systematically injured class members by providing them with inadequate care in violation of their rights under the Medicaid Act, the ADA, the Rehabilitation Act, due process, the New York Social Services Law, and the New York City Human Rights Law. (Caballero Pls.' Mem. at 8-9). There are also sub-issues including whether Healthfirst has properly identified and accounted for informal care; whether Healthfirst has a sufficient assessment system to allocate home care hours; and whether Healthfirst is accounting for span of time tasks and needs that cannot be scheduled. (Id. at 9).

Similarly, with respect to defendant DOH, plaintiffs assert that DOH retains an obligation to ensure that Healthfirst provides services in accordance with applicable law. (Id.) There is a common question as to whether DOH has ensured that Healthfirst's provision of Home Care services to its Medicaid-funded members is adequate under the law. There is also a common question as to whether DOH failed to oversee Healthfirst in its managed care programs that impacted all of the proposed class members. (Id.)

Given that the class members were all injured or potentially could be injured by Healthfirst's policies in providing Home Health Care services, see Teachers' Ret. Sys. of Louisiana v. ACLN Ltd., No. 01 Civ 11814, 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004), the Court finds that there are sufficient common issues to satisfy the requirements of Rule 23(a)(2).

16

### 3. Typicality

Rule 23(a)(3) requires that the lead plaintiff's claims be typical of the claims of the class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d at 936. Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, the claims of the Named Plaintiffs satisfy the requirements of the Rule in that they, like other members of the proposed Class, claim to have experienced or been at imminent risk of experiencing an inability to obtain necessary Home Health Care services in violation of the Medicaid Act, the ADA, the Rehabilitation Act, the Due Process Clause, and various New York State statutes. Specifically, the Named Plaintiffs allege that they had their services reduced or were denied increases in services because of Healthfirst's failure to provide adequate notice, failure to record requests, incorrect or false information regarding informal support provided, and deficient evaluation procedures. (Caballero Pls.' Mem. at 10). Plaintiffs further claim that the Named Plaintiffs' claims are typical of the proposed class because they allege that defendants' practices left them at risk for being moved from their homes to a more restrictive nursing home setting or placed them at risk due to a lack of adequate home care. (Id. at 10-11). They further contend that Healthfirst failed to initially consider whether the Named Plaintiffs were entitled to span-of-time care, and their claims against DOH for failing to adequately supervise Healthfirst

17

were typical of the proposed class members' claims. (Id. at 11). Irrespective of any differences in the exact services needed by each class member or the availability of certain defenses, plaintiffs' claims stem from defendants' alleged wrongful conduct, and are therefore sufficiently typical to warrant certification.

### 4. Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test. In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992). First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation." Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)). Second, the class members' interests may not be "'antagonistic'" to one another. County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

Pursuant to Fed. R. Civ. P. 23(g), the Court must assess the adequacy of proposed Class Counsel, looking to the work counsel has done in identifying and investigating the potential claims, counsel's experience in handling class actions and claims of the type at issue in the case, and counsel's knowledge of the applicable law. See Fogarazzo v. Lehman Bros., Inc. 232 F.R.D. 176, 182 (S.D.N.Y. 2005); see also In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (stating: "'(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be

qualified, experienced, and generally able to conduct the proposed litigation'") (quoting <u>Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.</u>, 229 F.R.D. 395, 412-13 (S.D.N.Y. 2004)); <u>Babcock v. Computer Assocs. Int'l, Inc.</u>, 212 F.R.D. 126, 131 (E.D.N.Y. 2003) (quoting <u>In re Drexel Burnham Lambert Grp., Inc.</u>, 960 F.2d at 291). The Court should also consider the resources that counsel is able to commit in representing the Class.

Here, the proposed Class has been represented to date by two teams of counsel, both of which are highly experienced and competent. The Caballero Plaintiffs have been represented by experienced attorneys from the New York Legal Assistance Group ("NYLAG") and Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss"). The Bucceri Plaintiffs have been represented by The Legal Aid Society and Winston & Strawn LLP. Both sets of attorneys from The Legal Aid Society and from NYLAG have extensive experience in litigating and representing Medicaid recipients with disabilities. (Garcia Decl.[7] ¶¶ 11, 13; Stevens Decl.[8] ¶ 5). For example, Belkys Garcia of The Legal Aid Society has represented "numerous clients who receive home care services from the Healthfirst MLTC plans and [has litigated] against those plans." (<u>See</u> Garcia Decl. ¶ 1). The two law firms who have been assisting in the representation of the plaintiffs in these cases bring with them additional talent and resources that have ensured that the plaintiffs in this case have been well represented. (Garcia Decl. ¶ 12; Stevens Decl. ¶ 6).

---

[7] Citations to "Garcia Decl." refer to the Declaration of Belkys Garcia in Support of Motion for Class Certification in Connection with Settlement, Appointment of Class Representatives and Class Counsel, Preliminary Approval of the Parties' Settlement Stipulation, and Approval of Notice to Class Members, filed on April 20, 2018.

[8] Citations to "Stevens Decl." refer to the Declaration of Jane Greengold Stevens in Support of the Plaintiffs' Unopposed Motion for Preliminary Approval of the Parties' Settlement Stipulation and Related Matters, filed on April 20, 2018.

Moreover, since the inception of this case, the plaintiffs' attorneys have demonstrated to this Court their ability to prosecute this case diligently and to represent the interests of the potential Rule 23 Class, as shown by the extensive effort that they have engaged in to settle this action on behalf of all Class members. Based on the educational background and legal experience of the attorneys involved in this case, particularly their extensive experience in similar cases, the Court agrees that the combined teams of Caballero and Bucceri attorneys are "well-qualified to serve as lead counsel in this matter." In re Fuwei Films Sec. Litig., 247 F.R.D. at 439.

Second, Class Counsel asserts that "where, as here, the claims of named plaintiffs are typical of those of the proposed class, there is strong evidence that no conflict of interest will exist, as the similarity in claims gives rise to an alignment of interests between named plaintiffs and putative class members." (Caballero Pls.' Mem. at 11) (citing Annunziato v. Collecto, Inc., 293 F.R.D. at 339). In order for a potential or actual conflict to defeat certification, it "must be fundamental." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted). There is no evidence that the interests of the Named Plaintiffs are antagonistic to those of the class members, and the Court is unaware of any potential, fundamental conflict of interest between the Named Plaintiffs and the class members. Based on the nature of the Named Plaintiffs' claims, the Court finds that the Named Plaintiffs' claims are so interrelated with those of the other potential Rule 23 Class members that they will be adequate class representatives.

B. The Requirements of Rule 23(b)(2)

    1. Common Questions Predominate Over Individual Issues

Plaintiffs must also establish that the proposed class meets the requirements of Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(2), a proposed class is appropriate where the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); accord Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011) (holding that class certification is appropriate where the nature of the remedy is indivisible; "it can be enjoined or declared unlawful only as to all of the class members or as to none of them").

Where, as here, injunctive relief is sought that will effect institutional reforms or systemic changes, courts routinely certify Rule 23(b)(2) classes. See, e.g., National Law Ctr. on Homelessness & Poverty, R. I. v. New York, 224 F.R.D. 314, 325-26 (E.D.N.Y. 2004); Nicholson v. Williams, 205 F.R.D. 92, 99 (E.D.N.Y. 2001). Courts in this Circuit have held that Rule 23(b)(2) certification is appropriate when the class claims violations of the Medicaid Act, the ADA, and the Rehabilitation Act. See Shakhnes v. Berlin, 689 F.3d 244, 262-63 (2d Cir. 2012); Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194, 208 (E.D.N.Y. 2005).

Plaintiffs seek injunctive relief to remedy Healthfirst's practices of reducing and denying requests for increased home care hours and DOH's alleged failure to oversee Healthfirst's provision of services. Not only do these practices affect the Named Plaintiffs and other current recipients of care, but the proposed Settlement addresses the practices for future Healthfirst members as well. The practices challenged here are institutional in nature and affect each potential Class member.

21

In Nicholson v. Williams, the court noted that "Rule 23(b)(2) is designed to assist litigants seeking institutional change." 205 F.R.D. at 99. The Rule is specifically designed for plaintiffs seeking injunctive relief from alleged deficiencies in the provision of services mandated by federal programs. (Caballero Pls.' Mem. at 14) (citing D.D. v. N.Y. City Bd. Of Educ., No. Civ. A. CV 032489, 2004 WL 633222, at *13 (E.D.N.Y. Mar. 30, 2004), vacated in part on other grounds, 465 F.3d 503 (2d Cir. 2006)). Here, plaintiffs assert that the proposed Settlement will improve the provision of health care services to the Class members and thus certification under Rule 23(b)(2) is warranted. Moreover, for purposes of the settlement only, defendants do not dispute the certification of the class. (Caballero Pls.' Mem. at 1, n.1).

Accordingly, the Court finds that plaintiffs have satisfied the requirements of Rule 23(b)(2).


II. Preliminary Approval of the Class Settlement

The plaintiffs seek preliminary approval of the proposed settlement, as memorialized in the Stipulation and Order of Settlement (the "Stipulation").

A. Approval of the Rule 23 Class Settlement

1. Standards

To grant preliminary approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R.

22

Civ. P. 23(e). Judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Whether a settlement is fair is a determination within the sound discretion of the court. Levitt v. Rodgers, 257 Fed. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process: first, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement, Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 116; second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012). In evaluating a proposed settlement in order to grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to the class members and to hold a fairness hearing. Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).

For procedural fairness, the court must determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by

23

examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

For substantive fairness, the Second Circuit has enumerated nine factors to guide courts in evaluating a proposed settlement:

> (1) [T]he complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012). Although the Court is not required to make a finding of fairness as to the underlying settlement at this time, the Grinnell factors are instructive. See Torres v. Gristede's Operating Corp., Nos. 04

CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting

that "[p]reliminary approval of a settlement agreement requires only an initial evaluation of the

fairness of the proposed settlement on the basis of written submissions and an informal

presentation by the settling parties") (internal quotation marks and citations omitted).

    2. <u>Analysis of Procedural Fairness</u>

In this case, counsel represents that settlement negotiations spanned a period from

September 2016 until April 2018, involving thousands of hours of negotiation and work, and

requiring difficult concessions on both sides. (Caballero Pls.' Mem. at 16). This Court oversaw

numerous settlement conferences with the parties in an effort to reach a resolution and assisted in

the negotiations leading up to the final Stipulation. Based on the Court's observations and

involvement, it is undisputed that the parties engaged in arm's-length negotiations and reached a

resolution that was hard fought on both sides, involving highly experienced and capable

attorneys. It also became clear to the Court that counsel had an intimate knowledge of both the

facts and the law applicable in this case and that counsel on both sides were familiar with the

intricacies of the health care plans at issue. The settlement is presumptively fair when a class

settlement has been reached after "arm's-length negotiations between experienced, capable

counsel after meaningful discovery." <u>See</u> <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d at

116.

Given that the parties have sufficient information about the claims, and given the negotiations took place at arm's-length, the Court finds that there was procedural fairness in reaching the proposed settlement.

### 3.  Analysis of Substantive Fairness

#### (a)  Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, while the expense and likely duration of this litigation is difficult to assess, the Court notes that defendants deny liability.  (Sett. Agr., Art. XII (I)). Indeed, absent a settlement, defendants indicated that they were contemplating a motion to dismiss in the Bucceri action.  Although any motion to dismiss has been obviated as a result of the settlement agreement, it suggests that trial in this case would be contested and potentially would be long and complicated.

Moreover, the number of factual and legal claims in the case and the number of parties involved make it clear that trial in the case would be complex.  See Romero v. La Revise Assocs., L.L.C., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (finding in an FLSA and NYLL lawsuit that "the large number of class members and the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"); Garland v. Cohen & Krassner, No. 08-CV-4626, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) ("Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense").

Indeed, in the absence of a settlement, this case would require a substantial expenditure of money and time by both parties in pursuing this litigation. First, the parties would need to engage in substantial discovery that would be necessary to establish liability, including multiple depositions of defendants' employees, the Named Plaintiffs, and potentially numerous other class members, as well as extensive document discovery relating to the defendants' justification for cancelling or reducing the plaintiffs' home healthcare services. In addition, there would likely have been extensive motion practice involving the issues raised in connection with the Medicaid program. (See Caballero Pls.' Mem. at 18). Moreover, there likely would have been motions for and oppositions to certification and decertification, in the event that the case survived the motion to dismiss. A trial in this matter would likely consume tremendous time and resources and, even assuming plaintiffs were successful in establishing defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay and increase costs to all parties. Thus, this factor of potential protracted litigation favors settlement.

(b)  Reaction of Class to Settlement

The reaction of the class to the settlement is an issue that can be addressed only after notice of the proposed Stipulation has been sent to the Class and the time for objections has passed. Since notice of the settlement has not been distributed to the potential Rule 23 Class members, the Court need not address this issue at this time.

### (c) The Stage of the Proceedings

Prior to engaging in settlement negotiations, the plaintiffs reviewed thousands of pages of documents, including information obtained from DOH pertaining to an audit of Healthfirst. (Caballero Pls.' Mem. at 19). DOH also produced 90 case files which included DOH's evaluation of Healthfirst. (Stevens Decl. ¶ 82). Counsel in <u>Caballero</u> was also familiar with the over 1,000 Fair Hearing decisions in which Healthfirst enrollees challenged a reduction in home health care. (<u>Id.</u> ¶ 8). The Bucceri Plaintiffs also reviewed 135 Fair Hearing decisions where the enrollees claimed they had been denied increases in their home care. (Garcia Decl. ¶ 16). Thus, it is clear that the plaintiffs have undertaken a sufficient amount of discovery to fully understand the legal and factual issues in the case. When counsel has sufficient information to appreciate the merits of the case, settlement is favored. <u>Velez v. Novartis Pharm. Corp.</u>, No. 04 CIV 09194 CM, 2010 WL 4877852, at *13 (S.D.N.Y. Nov. 30, 2010); <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d at 537. Thus, this factor therefore favors approval of the settlement.

### (d) The Risks of Establishing Liability

The risk of establishing liability also favors settling this dispute. Although plaintiffs have expressed confidence in the merits of their claims, defendants have not admitted or conceded fault, liability, or wrongdoing. (Sett. Agr., Art. XII (I)). Thus, plaintiffs' likelihood of success should be evaluated in light of the risks of trial and appeal and the prolonged nature of this type of litigation. As noted, the parties would need to engage in extensive and time-consuming discovery before the case could proceed to motion practice and trial. Defendants have been well represented by highly competent counsel who would likely pursue all potential defenses and

raise multiple issues in the course of the litigation, making the outcome of plaintiffs' claims uncertain.

There is also a risk that the class could be decertified if the case were to proceed through litigation. Defendants could move at any time to decertify the class and that risk, coupled with the need for additional discovery, briefing, and expense weighs in favor of the settlement. <u>Garcia v. Pancho Villa's of Huntington Vill., Inc.</u>, 2012 WL 53505694, at *3; <u>Parker v. City of New York</u>, No. 15-cv-6733 (CLP), 2017 WL 6375736, at *6 (E.D.N.Y. Dec. 11, 2017).

(e)  <u>The Remaining Grinnell Factors</u>

The remaining <u>Grinnell</u> factors—the risks of establishing damages, the ability of the defendants to withstand a greater judgment, the range of reasonableness of the settlement fund in light of the risks of litigation and the best possible recovery—are not particularly applicable here where the plaintiffs seek only injunctive relief and not damages. When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiffs' claims, the agreement is reasonable. <u>See In re Metlife Demutualization Litig.</u>, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010). In <u>Padro v. Astrue</u>, the Court approved a settlement in a case seeking injunctive relief, considering these <u>Grinnell</u> factors, and stating where "the settlement offers the class members the most important, most tangible form of relief sought by plaintiffs," the settlement merits approval. No. 11 CV 1788, 2013 WL 5719076, at *7 (E.D.N.Y. Oct. 18, 2013).

Here, according to plaintiffs, they requested the following relief: 1) enjoining Healthfirst from reducing or threatening to reduce their Home Care Services without notice; 2) enjoining Healthfirst from reducing or threatening to reduce services based on arbitrary limits; 3) requiring Healthfirst to provide a new notice to any class member whose services were actually reduced after January 1, 2015 due to an alleged prior mistake; 4) in those instances where such a reduction had occurred but no Fair Hearing had affirmed the reduction, requiring the DOH to provide a new opportunity for a Fair Hearing; 5) requiring DOH to ensure that Healthfirst provides timely and adequate notice when threatening to reduce services; 6) requiring DOH to ensure that reductions are not based on arbitrary limits on care; 7) requiring Healthfirst to accept, record, and timely process all requests for increases in services and to provide written notification of the actions taken and the right to an appeal; 8) enjoining defendants from refusing to provide sufficient, medically necessary services; 9) requiring DOH to monitor and supervise Healthfirst's plans and ensure compliance with all applicable laws; and 10) requiring DOH to retrain Healthfirst's staff. (Caballero Am. Compl. at 58; Bucceri Compl. at 49-50; Caballero Pls.' Mem. at 21-22).

Plaintiffs assert that the Settlement reached in this case achieves much of the relief requested and has resulted in substantial improvements in the provision of services by Healthfirst. (Caballero Pls.' Mem. at 22). Specifically, Healthfirst has agreed not to reduce or threaten to reduce care based on a prior mistake and will comply with DOH guidance as issued in November 2016, concerning what a notice of reduction must state and the methods used to determine the needs of the member. (Sett. Agr., Art. IV (C), (D)). In addition, any Healthfirst member who received a notice of reduction between January 1, 2015 and May 11, 2018 but did

30

not receive a Fair Hearing that resulted in a decision or a settlement, will receive a letter stating that he or she may request a Fair Hearing to challenge his or her old reduction in home care service hours in the event the member is still receiving a reduced amount of care. (Id., Art. IV (J)).

The Settlement also requires DOH to send an email to all Partial Capitation and MAP plans reminding them that 1) a member's plan of care must address all of their scheduled and unscheduled needs; 2) each member should receive a copy of a Person Centered Service Plan ("PCSP"), which should contain basic information about the member's assessed needs and whether those needs can be scheduled in advance for particular times of day; and 3) if certain needs cannot be scheduled, the PCSP should identify the days and hours when those needs may occur and how they will be met. (Caballero Pls.' Mem. at 23).

Given the relief requested in the Caballero and Bucceri Complaints, the Court finds that plaintiffs achieved significant relief in terms of the changes in policies and practices set forth in the Settlement. As such, the Settlement offers the Class some of the most important relief that plaintiffs seek in these matters.

In summary, on the basis of the foregoing discussion of the Grinnell factors, the Court finds the terms of the proposed settlement for the Rule 23 Class to be fair and reasonable under the circumstances present in this case.

III. Adequacy of Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Under Rule 23(e)(1), the "'court has virtually complete discretion as to the manner of

giving notice to class members.'" In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345

(quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)). In a Rule 23(b)(3)

class action such as this, "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort" must be

provided to the class. Fed. R. Civ. P. 23(c)(2)(B). In Eisen v. Carlisle & Jacquelin, the

Supreme Court held that individual notice, as opposed to general published notice, is required

by Rule 23(c)(2) for class members who are identifiable through reasonable effort. 417 U.S. at

173-76 (holding that "individual notice to identifiable class members is not a discretionary

consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island

Lighting Co., 64 F. Supp. 2d at 177. Notice is adequate if it "'fairly apprise[s] the prospective

members of the class of the terms of the proposed settlement and of the options that are open to

them in connection with the proceedings.'" Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d

at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).

Here, the proposed Notice of Class Action Settlement provides the following information:

(1) an explanation of who is a Class Member and the rights of the Class members, including the

process for lodging objections to the settlement; (2) a brief contextual background to this lawsuit,

including the nature, history and progress of the litigation; (3) a summary of legal rights and

options under the proposed settlement; (4) an explanation of the terms of the Settlement

Agreement and the relief provided; (5) an explanation of the Fairness Hearing and the date, time,

32

and place of the Hearing; and (6) necessary information for Class Members who wish to examine court records.  (Proposed Notice[9] at 2-5).

In this case, the Class Notice provides that Healthfirst shall, within thirty calendar days of the entry of the Court's Order preliminarily approving the settlement, mail, by first class mail, postage prepaid, the Class Notice to all Medicaid enrollees in the Healthfirst MLTCPs as of the date of entry of the Order.  (Caballero Pls.' Mem. at 24; see also Proposed Notice).  The Court will schedule the Fairness Hearing approximately 90 calendar days after the entry of the Preliminary Approval Order so that there is sufficient time for the Class Notice to be sent to the Class.

The Court finds that the proposed Notice and this means of notification are sufficient. The proposed Notice itself is sufficiently detailed so as to inform the Rule 23 Class members of their rights and obligations, and the method of notice is practical and likely effective in reaching the affected individuals.  See Weinberger v. Kendrick, 698 F.2d at 71-72 (stating that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances).  Given the detailed nature of the documents submitted by plaintiffs in support of their proposed class Settlement, along with the fact that defendants have not mounted an opposition to them, the Court preliminarily approves of the Settlement and approves of the Class Notice.

---

[9] Citations to "Proposed Notice" refer to the Notice of Proposed Settlement of Class Action Concerning Home Care Services Provided Through Senior Health Partners or Healthfirst CompleteCare, filed on May 4, 2018.

## CONCLUSION

Accordingly, for the reasons stated above, the Court: (1) provisionally certifies the Rule 23 Class for purposes of settlement; (2) grants preliminary approval of the proposed settlement, as articulated in the Settlement Agreement; (3) appoints the Named Plaintiffs as representatives of the Class; (4) appoints the New York Legal Assistance Group, The Legal Aid Society, Winston & Strawn LLP, and Paul, Weiss, Rifkind, Wharton & Garrison LLP as Class Counsel; and (5) approves the proposed Notice of Class Action Settlement and the proposed method of distribution. The Fairness Hearing is scheduled for **November 29, 2018 at 11:00 am**. Any Class Member shall have the right to appear and be heard at the Fairness Hearing or to submit a written objection to the Court within 14 days before the Fairness Hearing, pursuant to the terms of the Class Notice and Settlement Stipulation.[10]

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated:   Brooklyn, New York
         September 4, 2018

                                          /s/  Cheryl Pollak
                                          _____
                                          Cheryl L. Pollak
                                          United States Magistrate Judge
                                          Eastern District of New York

---

[10] Fourteen days before the Fairness Hearing is November 15, 2018. Given that defendants must mail the Class Notice to all Medicaid enrollees in the Healthfirst MLTCs within 30 days of the date of this Order, Class Members will have approximately 40 days to submit a written objection. (See Caballero Pls.' Mem. at 24).